UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Docket No.  23-CR-10157-AK |
| ) | |
| ) | |
| WILLIAM GIORDANI ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

*"Fall seven times and stand up eight."*
*-- Japanese proverb*

In the twelve months since Mr. Giordani's arrest in this case, he has worked to change the way he lives. That has not been an easy task. At 55 years old, he had essentially known only one way of life. Every day is a struggle to stay on the right path. Not surprisingly, he has stumbled a few times in the past year. Nonetheless, his progress is truly monumental. He has accepted responsibility for his poor judgment in delivering materials used in a bomb hoax to the Harvard campus, and for his poor judgment in how he responded after he was made aware of what he had been duped into. But his acceptance of responsibility goes beyond pleading guilty to a federal criminal offense; he has strived to change the things in his life that caused him to get involved in the offense in the first place: drug use, instability in employment, and homelessness. Given the nature of Mr. Giordani's involvement in this offense, the mitigating factors that contributed to his involvement in the offense, and the strides he has made while on pretrial release, he asks this Court to impose a sentence of one year probation. Such a sentence is "sufficient, but not greater than necessary" when all of the factors under 18 U.S.C. §3553(a) are considered.

Mr. Giordani's life has never been easy. He has blacked out much of his childhood. It is clear that he suffered from serious trauma during his childhood, and he has been diagnosed with

1

post-traumatic stress disorder as an adult. He dropped out of high school before graduating, and, at only 17 years old, joined in the military. It was also around this age that Mr. Giordani started using alcohol, marijuana, and cocaine, marking the start of a 37-year drug habit.

After receiving an honorable discharge from the military, Mr. Giordani bounced around. He primarily worked as a roofer but continued to use drugs and began committing petty crimes. His criminal history tracks his history of drug use, poverty and past trauma, and consists mainly of theft, simple assault, and drug possession. He was in and out of jail most of his adult life. For a period of time, he went to Virginia to get work in roofing, and while there he had a daughter. He continued to use drugs and commit petty crimes and moved back to New Hampshire, leaving his daughter behind and essentially walking away from her life.

Back in New Hampshire, Mr. Giordani continued to live his life the same way. While working as a roofer, he sustained serious injuries. In 2007, he fell 20 feet from a roof and was flown to Mass. General Hospital. He had a collapsed lung, broken ribs, and a broken wrist that had to be surgically repaired. The injuries have left him with chronic back pain, which has further contributed to his drug use and mental health. In 2014, he tried to kill himself by swallowing a bunch of pills and was hospitalized. As a result of Mr. Giordani's injuries, the chronic pain, and his mental health, he found it difficult to maintain full-time employment, and he started receiving Social Security Disability benefits.

At the time of the offense before the Court about one year ago, Mr. Giordani was living in his girlfriend's sister's apartment in Nashua. He was using cocaine daily and owed money to his drug dealer. He was collecting disability benefits and picking up odd jobs off Craig's List.  He had cut ties with almost all of his family members. He was living a life on the margins.

The person who posted the Craig's List ad Mr. Giordani responded to was deliberately looking for someone they could trick into assisting with their sinister plot. Mr. Giordani fit the bill. He agreed to purchase fireworks, pick up other items at a Home Depot, and deliver the items to the Harvard campus. He ignored one of his friends who said the job sounded like a bomb, and instead found another friend to take him to Cambridge. He was promised money for the job – which he desperately needed - and was assured that the materials were for a science project for the poster's son, a Harvard student. After reluctantly leaving the bag containing the materials he gathered at the poster's direction near a bench at the Harvard science center plaza, Mr. Giordani drove to Worcester to collect his payment for the job. There is absolutely no evidence that he knew these materials would be used in a bomb threat to Harvard University and cause the panic and fear that the poster created. When Mr. Giordani arrived in Worcester to collect payment, he received the following messages from the poster:

> *I would pay you but im out of state and everything I said was a lie I am not Vietnamese and I do not have a son.*
>
> *LOLOLOLOLOL*
>
> *get trolled*
>
> *Even though the bomb threat didn't work out fucking with you and the police was the most fund I've had in a long time*

When Mr. Giordani said he was going to report the poster to the police, the poster warned Mr. Giordani that Mr. Giordani would also get himself in trouble. Thereafter, Mr. Giordani did not go to the police and instead hid from them. He told his girlfriend not to say anything to anyone and deleted text messages with other people with whom he had discussed the delivery job. When Mr. Giordani was arrested, he admitted having stayed awake for several days straight in an effort to hide from the police.

Upon his release from this Court, Mr. Giordani's first attempt at substance abuse treatment was short-lived. The provider noted that Mr. Giordani was "ambivalent to change," and he was discharged after falsifying a drug test. After having his release revoked for about one month, Mr. Giordani was released again to the Turning Point program in Dover, NH. Again, at the start of treatment, Mr. Giordani was described as resistant to change. However, he stuck with the program and eventually completed all phases of treatment. In addition, he restored his driver's license and found full-time employment. He transitioned to a sober home associated with Turning Point after graduating. In November, Mr. Giordani relapsed again but worked with his probation officer to find a place at New Freedom Academy, from which he graduated at the end of January.

For the last two and a half months, Mr. Giordani has resided at a sober home while continuing to participate in drug treatment. He has secured full-time employment installing windows and doors and has been working for the same company for the past two months. He has saved enough money to secure his own apartment, where his girlfriend, who had been living in the YMCA, now lives. In what Mr. Giordani considers to be a sign from a higher power, this apartment is across the street from his adult daughter.

Before this case, Mr. Giordani's attempts at substance abuse treatment and mental health counseling have been sporadic and short-lived. Prior providers have opined that his prognosis was poor and that he was unlikely to engage in, or even benefit from, treatment. This prosecution has been the intervention that has changed all that. At 55 years old, Mr. Giordani has engaged in meaningful, sustained treatment. He has made big changes.

While Mr. Giordani does not dispute that he has benefited greatly from the resources and support of the Court's probation department, the one year he has spent on pretrial release has

4

been exponentially more difficult for him than for most offenders. It has required a greater change from him. One more year of probation is enough to ensure Mr. Giordani stays on the right track, while also constituting a fair and just punishment for his minimal involvement in this offense.

The efficacy of longer, and onerous, periods of probation has been called into question by recent studies. In fact, some research shows that it may be counterproductive. A 2020 report from Pew Charitable Trusts notes that a growing list of high-quality studies have shown that long probation sentences are not associated with lower rates of recidivism and are more likely than shorter ones to lead to technical violations. "States Can Shorten Probation and Protect Public Safety," (Dec. 2020), https://www.pewtrusts.org/en/research-and-analysis/reports/2020/12/states-can-shorten-probation-and-protect-public-safety. The report notes that many people on supervision serve longer terms than are necessary for public safety. *Id.* For example, an analysis of data from Oregon and South Carolina showed that, among people who were on probation for a year without being arrested, more than 90% could have spent less time on supervision without an impact on recidivism. *Id.* Another article surveyed several studies that demonstrate more intensive or longer supervision terms do not improve recidivism. Lopoo, Schiraldi, and Ittner, "How Little Supervision Can We Have?", 6 Annual Review of Criminology 23-42 (Jan. 2023).

For people with substance use disorder like Mr. Giordani, the stress caused by a requirement to remain asymptomatic can compound the risk of relapse. Addiction experts have identified a high correlation between stress, increased likelihood of substance use, and the risk of relapse. *See e.g.*, Breese, "Chronic alcohol neuroadaptation and stress contribute to susceptibility for alcohol craving and relapse," 129 Pharmacol Ther. 149 (2011); Sinha, "How does stress increase risk of drug abuse and relapse?", 158 Psychopharmacology 343 (2001). When

considering the length of time Mr. Giordani should remain on probation with a requirement that he abstain from using any illicit drugs, the Court should take into account the evidence regarding the ongoing risk of relapse, a risk that is inherent in substance use disorder, and how such a requirement can aggravate that risk. *See* Camí, "Drug Addiction," 349 N Engl J Med 975, 983 (2003) (noting that "exposure to environmental stressors" is a "factor[] involved in relapse and craving"); *see also* Koob and Le Moal, "Drug Addiction, Dysregulation of Reward, and Allostasis," 24 Neuropsychopharmacology 97, 118 (2001) (reporting that relapse often "occur[s] during states of stress . . .").

    The United States Supreme Court, recognizing the immense discretion afforded to sentencing judges, advised that sentencing courts should "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Where society's interest in and need for retribution, deterrence, and protection are concerned, offenders with substance use and mental health disorders, like Mr. Giordani, represent a special case. The late Chief Justice Gants of the Massachusetts Supreme Judicial Court pressed that a "sentence should be crafted to best enable the defendant […] to 'get past the past,' that is, to address the problems that brought the defendant to the courtroom in order to diminish the risk that he […] will commit additional crimes."[1] Mr. Giordani's proposed disposition and sentence are crafted specifically to enable him to get past his very long past, and to address the very issues which caused to him to commit the offense before this Court in the first place. A sentence of one year probation with a focus on supporting Mr. Giordani's efforts to

---

[1] Remarks by Chief Justice Ralph Gants, Supreme Judicial Court, Univ. of Mass. – Boston, Mar. 16, 2015.

lead a sober and stable life, serves and fulfills the sentencing goals of rehabilitation, public safety, and deterrence.

Respectfully submitted,
WILLIAM GIORDANI,
By His Attorney,

/s/ Jane F. Peachy
Jane F. Peachy, B.B.O.#661394
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I, Jane F. Peachy, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on April 18, 2023.

/s/ Jane F. Peachy
Jane F. Peachy
